368, also called Calabo Innovations against Sony Corporation. May it please the court, I represent Calabo Innovations in this appeal as well. My name is Dan Oleko. We seek reversal of the board's final decision on two grounds, an erroneous construction of peripheral circuit region, as well as the finding that Asano renders obvious the patent and discloses the peripheral circuit region under the board's construction. And we also seek vacator of the board's decision on the grounds that the IPR was unconstitutional. With respect to the peripheral circuit region construction, the board read out a portion of the claim language. We're talking about the claim language is peripheral circuit region. The board construed that to mean a region located in the periphery that is used for circuits. It didn't require that there are any peripheral circuits in the peripheral circuit region, which defies basic grammar. When you're talking about peripheral circuit region, you've got two noun modifiers, both describing what the region is. So peripherals describing what kind of circuits are in the region. But the board interpreted peripheral to only relate to where the region's located, which renders a portion of the claim redundant. The full phrase is a peripheral circuit region formed on a main surface of the semiconductor substrate and formed in an outer peripheral portion of the imaging region. If peripheral circuit region, if the peripheral part was only modifying region, and it was not peripheral circuit, then it would have been unnecessary to use peripheral again later on in that same clause. Excuse me. So the word peripheral clearly modified circuit and the board did not require the presence of any circuits at all in the peripheral circuit region. What do you make of the board's characterization of the claim is requiring that not any particular specific type of circuit be formed in the peripheral circuit region, but instead the claims require only a peripheral region that is used for circuits. Right. So that sounds like it isn't simply saying that circuits have no relation to the peripheral region. Well, the board there was injecting a use limitation into a purely apparatus claim. There's no place for that as this court decided a decade ago in Paragon Solutions. Don't read used for circuits to be a shorthand for where circuits are present? Well, that is not what the board said. I mean, the board said used for circuits. I was going to say it says it doesn't require any particular type of circuit. And you take that in juxtaposition, which is that it has to be used for circuits. Seems to support our understanding that what the board is saying here is that it has to be circuits, not reading out the word circuits, but instead we're not going to limit it to a particular type of circuit as argued. Well, I understand that interpretation of the board's decision, but the real problem is that it didn't require any particular type of circuits to be present. So that's really the heart of your argument, is your argument that the circuits had to be a specific type of circuits, including a MOSFET. They had to be peripheral circuits in the peripheral circuit region, which makes sense, I think. Right. But not just throughout the specification, and the specification refers to protection circuits in particular as a type of peripheral circuit. How about the point that a diode is a form of protective circuit? I think a diode is a part of a circuit. Yeah, I wondered about that. The references to the diode as in a rectifier, but sometimes seem to refer to it as a circuit. I wonder if that isn't sure. The diode, when referred to as the circuit, isn't just a shorthand form of a circuit containing a diode. Are you talking in reference to a particular part of the specification or just the prior art in general? The prior art. The prior art. So I don't think the prior art specifically referred to the diode as a circuit, but even in the only reference at issue here is Asano, and Asano's reference to a protective diode is... That's the reference I'm talking about, is the protective diode in Asano. In Asano. The protective diode in Asano, well, so first off, Petitioner's appellee had the burden of showing that the protective diode was a circuit, and I don't believe they really addressed that. They just assumed it was a circuit element, I think was their expert's conclusion without any real basis. But even assuming that is a circuit, it was disclosed in a manufacturing process portion of Asano, which describes the manufacturing process for a CCD chip, and the figures 1 and 8, those embodiments in Asano, which Sony relied upon to show the disclosure of the initial portions of the claim elements, are not a CCD. So you can't take a process for manufacturing a CCD and apply it to a non-CCD structure unless you have some motivation to do so, and their expert never provided any obviousness, even on a single source reference, requires some motivation to combine if you're going to be combining and mixing and matching different embodiments of that reference. So the issue with Asano is primarily one of there's no motivation to combine that embodiment related to a manufacturing process with the other embodiments in Asano that do not disclose in the figures or it doesn't disclose in the text a reference to a protective diode. But as I noted, it's pretty clear throughout the specification that the peripheral circuit region must include a peripheral circuit or at least a protective circuit. Every embodiment talks about having the specific semiconductor layers that form a protective circuit or a peripheral circuit. All the figures show those layers. The logical conclusion, because of all the disclosures in the embodiments, is that peripheral circuit region requires a peripheral circuit. In addition, the patent's purpose, intended purpose, deals with preventing source leakage, dark current associated with etching through a PNN junction. You don't have a PNN junction if you don't have a circuit present in those circuit layers. So if there was no peripheral circuit in the peripheral circuit region, you wouldn't even need the patent. The patent wouldn't be accomplishing its intended purpose, at least. And importantly, the board ignored Dr. Aframowicz's testimony with respect to this limitation. Dr. Aframowicz's testimony was uncontradicted, or at least the board just addressed it. The board's analysis discussed it generally in the summaries of the party's arguments, but it never explained why it disagreed with Dr. Aframowicz, which is in itself an error because the board is required to explain the basis for its decisions and didn't do so there. And while Sony argues that Dr. Aframowicz's testimony is inconsistent with specifically in its decision. I didn't read your brief necessarily as raising that last issue of whether the board adequately explained its reasoning by not clearly addressing your expert's testimony. Am I, is that raised in your brief? It's discussed in the, at least in the reply brief, but I don't know if it's teed up specifically as a separate issue for vacator, but I didn't see it in your opening brief. Okay. And with respect to the retroactivity issue with 724 patent, we don't dispute the fact that that patent issued after the AIA. The problem here is that the patent had a notice of allowance immediately before the passage of the AIA. And so the AIA happened just in that intervening period between the notice of allowance and between issuance. In fact, the IPR statute itself, by virtue of the AIA, wasn't even in effect until a year after the AIA's passage. So the IPR statute in the end is being applied retroactively to the 724 patent. So it suffers the same unconstitutionality issues as the 714. Do you think for retroactivity purposes, the effective date of the statute is what governs as opposed to the date which, that it was enacted? Everyone's on notice as of the day it's enacted. It is, that's true. And while it's generally true that the law applies as of the date of the issuance of the patent, it's also true, and I don't think this is really disputed by the cases, but it's reflected in Justice Stevens's Aldrich v. Ashcroft, that Congress can't change the bargain between the public and the patentee in a way that disadvantages the patentee. And that's really what happened here. When you get to that process of going through prosecution, getting a notice of allowance, you've already disclosed your invention to the public. You've already, the patentee has already provided its end of the bargain. And to have the bargain change at the last minute is just unfair. And I think that's, it's detrimental just as it is for a patentee who gets their patent issued before the AIA. So I'm going to reserve the rest of my time for rebuttal. Thank you. Thank you, Your Honors. Matthew Smith for the appellee again. Let me begin by addressing, I think, the confusion regarding the construction of peripheral circuit region. In the gray brief, Collabo has a footnote, too, which says, Sony's argument that the specification does not require MOSFETs formed of a P-type and N-plus type semiconductor layer in the peripheral circuit region is a strawman argument, and Collabo did not make this argument in its opening brief. The thing is, that was Collabo's argument to the board, MOSFETs formed in a P-type and N-plus type layer. And that argument is now being characterized as Sony bringing up a strawman, which presumably means sort of weak argument you bring up to easily shoot it down. So I think this is an acknowledgment that Collabo is just flat out changing the construction on appeal. And I understand there's some latitude to look into the intrinsic evidence and maybe support the construction in a different way without waiver, but I don't think that latitude extends to a wholesale different construction on appeal, which I understand the construction on appeal now to be that the peripheral circuit region has to have a protective circuit, not a MOSFET, a protective circuit formed in P-type and N-plus type layers and a MOSFET. So I think it's changed to that on appeal. But regardless of what various constructions may be out there, I think the board is right in the way it construed the claims. They were right to reason, I think, from the literal language of the claims, the way claim one is set up as dividing the chip into an imaging region, a peripheral circuit region, and specifying the components that are in each region to the peripheral circuit region does not. And I think that's certainly telling and certainly something the board was correct to factor in. Collabo's argument also, I think, depends on a peripheral circuit being a sort of known thing in the specification. And it's just not. The only place that peripheral circuit occurs on its own in the specification is in column two, lines six to nine. I'm not responding to a suggestion that there's a lexicography argument going on here. There's an express definition. Yes, there's certainly a lexicographical element to that, Judge Stolt. But there's another element to that too, and it relates to Collabo's argument that there's a redundancy in the claim because the claim says peripheral circuit region and then gives a location which is on the periphery. And I think what the inference Collabo wants to draw from that is that the word peripheral, although in sort of its ordinary parlance would mean on the edges, is actually here talking about a type of circuit. And so that leads to the question, well, what is a peripheral circuit in the specification? Because if a peripheral circuit is broadly defined or undefined in the specification, then the board was just right to say there's a region out there on the periphery and it has to be used for circuits. But if it's something specific in the specification, then maybe the board needed to include that in the construction. So that's the issue it's driving at. And there isn't anything specific in the specification that says a peripheral circuit is this. The only time peripheral circuit is mentioned on its own without region following it is that passage in column 2 where the 724 patent seems to set it off in juxtaposition to the protective circuit, which is what Collabo now wants to read into the claim language. Specifically it says the protective circuit and the like are formed in the P-type semiconductor layer 112. That's the only place I could find where peripheral circuit stands on its own as opposed to being a descriptor for the term region. Just to be precise, there's standalone and then there's with something else. Is something else always the word region or might there be something, a different word from region that makes it not standing alone? Yeah, I don't think I've done that analysis, your honor, but from memory, I believe it is region every single time. So consistently region, but with a qualification. The peripheral circuit region is described in some of the embodiments as having various things, but what Collabo is attempting to add now, I think, which is the protective circuit that is formed in a P-type and N-plus type layer is not necessary in any way for the invention, I think, despite what my counterpart said. In fact, the invention as the board described it in appendix pages three to seven of their opinion was avoiding having the through electrode cut across a PN junction. So it's really the absence of a PN junction in the region of a through electrode that constitutes what they're describing as the invention, which means that you can have the invention without having a PN junction there. The point is, the important point for the invention is that the PN junction is absent in the region of the through electrode. And so it's not necessary to have a protective circuit formed of a P layer and an N-plus type layer in order to achieve what the patent is describing as the invention. And I would also point out that the patent actually says that in the peripheral circuit region, you don't need to form the P-type layer and you don't need to form the N-type layer. And this is at column five, lines 38 to 47. And it's repeated a couple of times in the specification. And I think that just goes back to the fact that you can form what they thought of as the invention, having a through electrode that doesn't cut across these various layers, and therefore it doesn't generate the leakage and the dark current without having P and N-type layers there. Because the point is the absence of those layers around where the electrode is penetrating through the entire semiconductor. Let me address quickly the question of whether, Judge Bryson's question of whether the diode is a circuit. Yes, thank you. I was just going to ask. No problem. This just as background was not an issue that was brought up below. So we're now sort of fishing around in the record on appeal. But the 724 patent does it exactly the same way. So at column five, it has a protective circuit. The word circuit is attached to the diode. And it's only a diode. And this is column five, lines 36 to 38. But that's really not precisely accurate, right? A diode standing alone is not a circuit, any more than a capacitor or a resistor is a circuit, right? Yeah, it gets a little bit metaphysical. It's a circuit element. Just down at the much below metaphysical level at which I operate, it seemed to me that I can go to, well, I used to be able to go to Radio Shack and get a diode. And it would come in a little package, and it would have a wire going at one end and a wire going at the other. There's no way that's circuit, right? Right. So I would say a couple of things to that. One is that in the complete circuit in any computer system is the connection all the way back to the power plant, right? It's the full closed loop. Okay. But in normal parlance, you wouldn't say, well, the laptop I have here with me doesn't have circuits in it because it doesn't have circuits until I hook it up to power, right? In the normal parlance... Battery, that's probably good enough. Yeah, but you could just take the battery off and the same thing would apply, right? There's a closed, there's an open circuit there that's not a complete circuit, and yet we're still going to call it circuits. In the 724 patent, they also call it a circuit, and it's just a diode. This is what I was referring to at column five, lines 36 to 38, where they say the P layer and the N plus layer forms the protective circuit. And that is a diode. The P, just a P and an N layer together is a diode, right? And that is what they call the protective circuit. You're saying it like 36 to 38? 36 to 38, right. Thank you. So the 724 patent itself is calling the diode that it says exists in the peripheral circuit region in this embodiment, a protective circuit. So it's using the sort of shorthand as a diode for circuit. And the third thing is the protective part of the diode doesn't occur unless one side of the diode is hooked up to the bonding pad and the other side is hooked up to ground or to power, depending on what kind of diode it is. The function of the protective circuit is to allow a pathway for current that might build up if there's a static electricity charge to go to ground. And it's not protective if the ends of it aren't hooked up in a circuit. So the very fact that the Asano reference says protective diode indicates that it's hooked up in the circuit. And if that's the issue of whether Asano is implanting a sort of diode in the peripheral circuit region, I don't think that's a technically very telling issue. Of course, the protective diode on Asano is hooked up and it works the way one expects protective diodes to work, but also not an issue that was raised below. So we don't necessarily have the record to say that. I just want in the 20 seconds that are left, bring one factual issue relating to the constitutional issues. And that is that in the takings analysis, in the retroactivity analysis, there's this idea of investment-backed expectations. Collabo actually purchased these patents in 2014, both the 714 and the 724 that's the subject of this appeal. That's also not in the record because the constitutional issues weren't raised below. So something perhaps that could have been developed. And since you mentioned takings, am I misremembering that in takings law, the Supreme Court has said the time of acquisition is not actually going to essentially set the clock back to zero on the takings claim? I don't know whether you're misremembering that or not, Your Honor. Thank you very much. Thank you. Thank you, Your Honor. I just wanted to make two quick points. First, in this case, their constitutional challenge fails at the threshold because, as has already been discussed, the patent was issued after the AIA was passed. So there's no retroactive application of the law here at all. Second, just on the forfeiture question, I just would be remiss if I didn't mention In re DBC, in which this court held that a constitutional challenge to the Board of Patent Appeals and Interferences was waived because it wasn't raised before the board. And on the D.C. Circuit case that... I don't remember that case. In that case, were there or could there easily have been properly appointed board judges who could have then proceeded to carry out the statutory function? Yes, Your Honor, there were. They could have assigned the case to a panel of judges that were properly appointed. And that's not really true here. Here, the option for the agency to make the challenge non-futile is just to go out of the IPR business. Not entirely, but with respect to a particular challenge in which it's a retroactive application. I think the key point is that in both cases, it wouldn't have been futile. But again, if this court disagrees, even the Supreme Court has explained in Elgin that there are reasons to require litigants to raise claims before agencies. Was that about essentially the statutory authority or was it more of a procedural sort of claim? Your Honor, I believe that case involved the Merit Systems Protection Board. Okay. I can read it. Okay. I mean, it had to do with whether the claims had to be channeled through the agency or could directly be brought in district court. And in the course of addressing that argument, the court explained that even if the agency didn't have expertise in the particular constitutional questions, there are lots of things that the agency could have explained, could have applied its expertise to that could have aided a court in later reviewing the constitutional issue. And we think that that's generally true and would be true here as well. And lastly, in the D.C. Circuit case that my counterpart mentioned, there was one claim there that the court held was not forfeited because the agency could have regulated in a way that would have obviated the constitutional challenge that they were bringing. And I think the same is true here for the reasons we've discussed. The board could have declined to institute inter parties review if it thought that there was merit to the constitutional challenge. If there are no Again, I just have a few comments based on my counterpart's arguments. First, it was suggested that we've changed our claim construction on appeal with respect to the peripheral circuit region issue. That's not actually true. As the board noted in footnote eight of its decision, this is on appendix page 14. It's unclear from the record whether Pat Nona proposes that peripheral circuit region requires at least transistors that have source or a protective circuit comprising P-type semiconductor layer and an N-type semiconductor layer, or at least MOSFETs formed of a P-type and an N-type, N-plus type semiconductor layer. So that there were several different proposals that were raised in the Pat Nona response below, arguably. What is your position now with respect to the MOSFET? All right. The position now is that the peripheral circuit region should have a source drain region of a MOSFET. Of a MOSFET. So it does have to have a MOSFET. At least the source drain region of the MOSFET. Yes, yes. It does have to have a MOSFET, and that's based on the portion of the specification. That was my understanding of the position. So, all right. But it doesn't have to be made of, formed of a P-type and N-plus type semiconductor layer. We didn't make that argument in our opening brief, and maybe that was referenced below to the P tab, but we're not advocating for that currently. Well, go ahead. My counterpart mentioned that there's no definition of peripheral circuit region in the specification. Well, that's not necessary for the specification to limit or inform the claim construction of, the claim construction here because of the references in all embodiments to this particular set of layers that form a protective circuit. And my counterpart mentioned that we hadn't brought up below this issue of whether a we did argue below that Mr. Guidosh, their Sony's expert, merely provided a conclusory statement that called the protective diode, that called the diode a circuit, or a protective circuit without any support whatsoever. So that's really the issue is not And finally, with respect to the cases that the government relies on for waiver, the case it cited in its brief, NRA DCB, involved agency action, the action of the appointing ALJs by the PTO. It wasn't a constitutionality issue of a statute. I think that's a very relevant distinction. Here we're dealing with a federal statute, whether that statute is unconstitutional and the board just didn't have, doesn't have authority to strike down that statute or anything else. You know, that's for this court to resolve in the court system. Unless you have any further questions, I'm... Thank you for your arguments. The case is submitted and thanks to all counsel